FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 12 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

MOHAMMAD AHMAD,
A # 030948654,

        Petitioner,

-against-

STEPHEN G. FAKAN, Consul General, U.S. Consulate,
Karachi, Pakistan; HILLARY RODHAM CLINTON,
Secretary of State of the U.S.; ERIC H. HOLDER, JR.,
Attorney General Of the U.S.,

        Defendants.

---------------------------------------------------------------- X

10-CV-2352 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

On May 24, 2010, Mohammad Ahmad ("plaintiff") filed a petition for a writ of mandamus seeking the court's intervention to compel governmental authorities to take action on a visa petition he filed in 1982 on behalf of his sister, Shamim Akhtar ("Ms. Akhtar"), and her children.[1] As stated in the operative complaint, plaintiff seeks adjudication of the 1982 visa petition and a final decision regarding visas for Ms. Akhtar's now-adult children, Javed and Tanveer Cheema ("Javed and Tanveer"). Dkt. No. 30 ¶ 3. Presently before the court is defendants' motion to dismiss the petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, defendants' motion is granted.

## BACKGROUND[2]

In 1982, plaintiff filed an I-130 petition for an immigrant vision on behalf of Ms. Akhtar, who was then a resident and citizen of Pakistan. Dkt. No. 30 ¶ 1; Dkt. No. 35, Ex. B. Ms.

---

[1] The original petition, as well as the first and second amended petitions, listed Ms. Akhtar as an additional plaintiff. See Dkt. Nos. 1, 13, 26. Her name was removed from the caption of the third amended petition. See Dkt. No. 30.
[2] The statutory and regulatory framework governing the issuance of immigrant visas is summarized in defendants' memorandum of law in support of their motion to dismiss. The court assumes familiarity with that framework.

1

Akhtar's sons, Javed and Tanveer, were listed as her minor children in the petition, making them its derivative beneficiaries. Dkt. No. 35, Ex. B; see Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 5-6. On the petition, plaintiff indicated that he was separately filing immigrant visa petitions for other family members, including his sister Perween Akhtar. Dkt. No. 35, Ex. B. The U.S. Immigration and Naturalization Service approved Ms. Akhtar's petition in September 1983 and informed plaintiff that the petition had been forwarded to the U.S. consulate at Karachi. Dkt. No. 30 ¶ 19; Dkt. No. 35, Ex. C.

The U.S. Foreign Service subsequently sent correspondence to Ms. Akhtar indicating that it had received an approved visa petition according her P5-1 preference status and that her priority date was August 19, 1982. Dkt. No. 35, Ex. D. A form letter, dated September 7, 1988, instructed Ms. Akhtar that, to prepare for her appointment to file a formal immigrant visa application, she should, inter alia, "complete and return immediately . . . the enclosed Optional Form 179" and obtain passports and copies of birth certificates for each person named in the application.[3] Id. In a separate letter from the American Vice Consul that appears to have accompanied the form letter, Ms. Akhtar was informed that that visa numbers in her category were available only for persons with a priority date earlier than October 15, 1980. Id. The letter stated that "[a]t such time as it is possible to take further action on your application, this office will inform you." Id.

A recent search of the relevant records has "not reveal[led] whether [Ms]. Akhtar sent further information to the United States consulate and if she did when and how such further information was transmitted." Dkt. No. 37 ¶ 13. However, according to plaintiff, Ms. Akhtar promptly submitted the requested documents. See Dkt. No. 30 ¶ 21; Dkt. No. 35, Ex. A ¶ 4. She

---

[3] The copy of this letter that is in the record contains only one page and appears to be missing one or more pages. The letter states that three steps are required to prepare to file a formal application but lists only two of them. See id.

also purportedly "contacted the U.S. Embassy in Islamabad several times, and went there in person in April 1989 and September 1989." Dkt. No. 35, Ex. A ¶ 5.

Visas became available to Ms. Akhtar and her sons, Javed and Tanveer, on March 1, 1990, but there is no record of their having subsequently filed a visa application with the consulate in Pakistan or having appeared for an interview by a consular officer, as required to obtain visas. Dkt. No. 37 ¶ 3-5; see 8 U.S.C. § 1202; 22 C.F.R. § 42.62(a), (b) (1990). Plaintiff contends that neither he nor his family members "ever received biographic information forms, requests for evidence or any other indication that the Service required anything else to process the visas." Dkt. No. 30 ¶¶ 22, 27. He asserts that he contacted the U.S. Embassy in Islamabad and the consulate in Karachi "on multiple occasions in an attempt to have the visas released" and that his U.S. citizen brother traveled to the Embassy in Islamabad to inquire in person about the status of Ms. Akhtar's visa but "also received no helpful answers." Dkt. No. 35, Ex. A ¶¶ 6-7; see Dkt. No. 30 ¶¶ 29-30.

On February 14, 2002, plaintiff filed another I-30 petition on behalf of Ms. Akhtar and, as derivative beneficiaries, her husband and four children. See Dkt. No. 40, Ex. 1. Plaintiff indicated therein that he had not previously filed a petition for Ms. Akhtar or any other alien. Id.

In 2005, plaintiff and his family hired an attorney, who initiated an inquiry into the status of Ms. Akhtar's 1982 petition by letter dated May 26, 2004. Dkt. No. 30 ¶ 31; Dkt. No. 35, Ex. F. In a letter to the U.S. Embassy in Islamabad dated August 5, 2005, the attorney acknowledged that, "[b]ased upon information received from the American Embassy in Islamabad, your records do not contain any information on Ms. Shamim Akhtar." Dkt. No. 35, Ex. G. The letter noted that a visa had been granted in 1995 under the simultaneously-filed petition of Perween Akhtar, Ms. Akhtar's sibling, and suggested that the Embassy "verify that Shamim's file was not

3

mistakenly included in Perween's file." Dkt. No. 35, Ex. G.

The United States Citizenship and Immigration Service ("USCIS") approved the 2002 I-130 petition on November 17, 2009. Id.

Six months later, plaintiff, joined by Ms. Akhtar, commenced this action for writ of mandamus seeking an order directing the issuance of visas to Ms. Akhtar, her husband, and her four children pursuant to the 1982 I-130 petition. Dkt. No. 1. The mandamus petition was amended on September 13, 2010. Dkt. No. 13.

On June 17, 2011, Ms. Akhtar filed with the Department of State a visa application pursuant to the approved 2002 petition. Dkt. 37 ¶ 16. USCIS assigned a priority date of August 19, 1982, despite the petition's having been filed in 2002, and forwarded the case to the consulate in Islamabad on May 13, 2011. Id. In July and August 2011, the Department of State issued visas, in response to the 2011 application, to Ms. Akhtar, her husband, and two of her adult children, whom the consular officer determined were covered by the provisions of the Child Status Protection Act ("CSPA"), which, in certain circumstances, enables adult children to obtain visas as derivative beneficiaries of a parent. Id. ¶¶ 17-19; see Defs.' Mem. at 7-8. However, Ms. Akhtar's other children, Javed and Tanveer, were denied visas because "application of the CSPA using the 2002 petition under which their mother than they applied for visas did not bring their ages under 21." Id. ¶ 20.

On September 23, 2011, plaintiff, together with Ms. Akhtar, again amended the mandamus petition, asking for relief in the form of an order directing the issuance of visas to Javed and Tanveer pursuant to the 1982 visa petition. Dkt. No. 26. Defendants filed a letter requesting a pre-motion conference on an anticipated motion to dismiss, which the court held on November 30, 2011. Dkt. Nos. 27, 29. Having identified potential deficiencies in the second

amended petition, plaintiff was granted leave to amend before defendants moved for dismissal. See Dkt. No. 29.

On December 22, 2011, plaintiff filed a third amended petition. Dkt. No. 30. The current operative petition alleges that the U.S. consulate in Karachi failed to meet its duty to process visa applications and "send out the necessary paperwork, including interview notices." Dkt. No. 30 ¶ 41. As relief, petitioner seeks an order directing defendants "to adjudicate the matter of the beneficiaries' visas under the 1982 petition, and to issue a final decision in this matter without delay." Id. at 8. Defendants have moved to dismiss the petition on the grounds that (1) the action is barred because defendants have no duty to issue visas to Javed and Tanveer; (2) the action is barred under the doctrine of consular nonreviewability; (3) the petition fails to state a claim for relief under the CSPA; and (4) the action is otherwise barred by laches. For the reasons stated below, defendants' motion is granted.

## DISCUSSION

I. Standard of Review

Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Only a "plausible claim for relief survives a motion to dismiss." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 476 (2d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2d Cir. 2009). However, courts are "not

5

bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949-50 (citation and internal quotation marks omitted).

II. <u>Mandamus Relief is Not Available</u>

"The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff . . . only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984). "A party who seeks a writ of mandamus must show a 'clear and indisputable right' to its issuance." Escaler v. U.S. Citizenship & Immigration Servs., 582 F.3d 288, 292 (2d Cir. 2009) (quoting Miller v. French, 530 U.S. 327, 339, 120 S. Ct. 2246, 147 L. Ed. 2d 326 (2000)). Plaintiff argues that defendants owe him and his family the nondiscretionary duty of adjudicating Javed and Tanveer's visa petitions. The court cannot agree. As defendants correctly argue, "[d]efendants have no duty to Javed and Tanveer, because they have not complied with the requirements for obtaining a visa under the 1982 I-130 Petition." Defs.' Mem. at 13. At the time that Javed and Tanveer became eligible for immigrant beneficiaries under the 1982 petition, the relevant regulations required would-be immigrants whose I-130 immigrant petitions had been approved, to, <u>inter alia</u>, make a visa application at the consulate in Pakistan, appear personally before a consular officer for its execution [or have someone appear in their place], and undergo an interview with a consular officer. 8 U.S.C. § 1202; 22 C.F.R. 42.61-42.68 (1990). The government has proffered evidence indicating that there is no record of Ms. Akhtar's or her son's ever having undertaken these steps, and plaintiff does not contend otherwise. As such, defendants have no obligation "to adjudicate the matter of the beneficiaries' visas under the 1982 petition." Dkt. No. 30 at 8.

Plaintiff appears to argue that the brothers were unable to fulfill the requirements for

6

obtaining a visa because the consulate did not contact the family, after it submitted the requested paperwork, to proceed with the visa application process. In this regard, plaintiff asserts that "[i]t was the legal duty of the consulate to send the appropriate paperwork and requests for evidence to approved applicants," insofar as "[a]n applicant must have an appointment letter in order to be seen, which s/he can only have in her/his possession if the government has followed its protocols and fulfilled its duties to applicants." Pl.'s Surreply [sic] to Defs.' Mot. to Dismiss ("Pl.'s Resp.") at 8. While plaintiff's argument carries practical appeal, it does not entitle him to any relief or compelled action from defendants.

At the time that Javed and Tanveer became eligible for a visa as derivative beneficiaries, it appears to have been the State Department's practice to issue interview appointments to would-be applicants when visas became available. In commentary attending a subsequent rule change by the State Department, the Federal Register described the then-contemporary practice of notifying would-be immigrants of visa availability as follows:

> Under standard procedures, an applicant is requested to obtain the necessary documents to apply formally for a visa only when it appears that a visa number may become available within the following six months for persons with the applicant's priority date. The notice also instructs the applicant to notify the consular officer when the alien has complied with all the requirements therein. An appointment for an interview is *customarily sent* only upon receipt of the applicant's response and the allocation of a visa number for the purpose of visa issuance.

56 Fed. Reg. 49678 (Oct. 1, 1991) (emphasis added). While plaintiff's purported non-receipt of an interview notice could, therefore, have been the result of a departure from normal procedure, it cannot be deemed a lapse in any duty owed plaintiff because there existed no contemporaneous statute or regulation that obligated the State Department to notify potential applicants when visas became available after it had alerted them of their priority dates and the steps necessary to

7

prepare their formal visa applications.[4] In the absence of any such obligation, plaintiff cannot show a clear and indisputable right to the issuance of a writ directing defendants to take any action with regard to the 1982 petition.

In light of the pleading history of this case, it is appropriate to dismiss the action with prejudice. Leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and . . . the resulting prejudice to the opposing party." Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.3 (2d Cir. 1987). Following a status conference held on November 11, 2011, plaintiff was afforded a third opportunity to amend his petition and was cautioned that no further amendments would be permitted. See Dkt. No. 29. Plaintiff's current petition implicitly acknowledges that Javed and Tanveer did not file a visa application, a necessary prerequisite to the form of relief that plaintiff seeks. As such, it is clear that amendment would be futile.

## CONCLUSION

Defendants' motion is granted, and the case is dismissed with prejudice. The Clerk of Court is directed to issue judgment accordingly.

SO ORDERED.

/s/(ARR)

_____
Allyne R. Ross
United States District Judge

Dated: September 10, 2012
Brooklyn, New York

---

[4] The regulations provided that "[c]onsular officers shall request applicants to take the steps necessary to meet the requirements . . . in order to apply formally for a visa," 22 C.F.R. § 42.54 (1990), an obligation that was executed through the transmission of the form correspondence to plaintiff's sister in September 1988. However, those regulations do not mandate that consular officers inform applicants when visa numbers become available.

8